IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 22, 2012

## STATE OF TENNESSEE v. DEMETREE TYON HARRIS

**Appeal from the Criminal Court for Knox County**
**No. 92250    Mary Beth Leibowitz, Judge**

_____

**No.  E2012-00465-CCA-R3-CD - Filed October 24, 2012**

_____

The Defendant, Demetree Tyon Harris appeals the Knox County Criminal Court's order revoking his probation for aggravated assault and misdemeanor theft and ordering the remainder of his five-year sentence into execution. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which ALAN E. GLENN and JEFFREY S. BIVINS, JJ., joined.

Mark E. Stephens, District Public Defender; and Jessica Greene, Assistant Public Defender, for the appellant, Demetree Tyon Harris.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Jeff Blevins, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant pleaded guilty on August 5, 2009, to aggravated assault and misdemeanor theft. He received a five-year sentence to be served in split confinement of time-served plus thirty days and the balance on probation. He was also ordered to pay $1800 in restitution. On December 11, 2009, the Defendant's probation officer filed a probation violation report alleging that the Defendant failed to obtain employment, failed to report to his probation officer, failed to pay court costs and probation supervision fees, and engaged in assaultive, abusive, threatening, and intimidating behavior. On April 29, 2010, the trial court waived the Defendant's probation fees and dismissed the petition for revocation of probation. On April 29, 2011, the Defendant's probation officer filed a second probation

violation report alleging identical violations. On May 27, 2011, the court found that the Defendant violated his probation, revoked his probation, and placed him on enhanced probation.

On July 7, 2011, the Defendant's enhanced probation officer filed a probation violation report alleging that the Defendant failed to abide by his 6:00 p.m. curfew and engaged in assaultive, abusive, threatening, or intimidating behavior. On January 25, 2012, the Defendant's probation officer moved to amend the probation violation warrant and added a new violation against the Defendant for engaging in assaultive, abusive, threatening, or intimidating behavior.

At the revocation hearing, Faye McNutt, the Defendant's enhanced probation officer, testified that enhanced probation was the next step after a defendant was unsuccessful at regular probation. She said she interviewed the Defendant on May 18, 2011, after a violation report of his regular probation was filed. She said she spoke with a social worker at the Public Defender's Office and determined the conditions for his enhanced probation. She said the Defendant was allowed to continue living with his mother because she lived within one and one-half mile of the Public Defender's Office where the Defendant was seeing a social worker. She said she wanted the Defendant to participate in numerous classes. She said that she wanted the Defendant to be placed on electronic monitoring but that it was not available until later. She thought these conditions would give the Defendant the best chance of success.

Ms. McNutt testified that the Defendant was released to enhanced probation on May 26, 2011, and that the Defendant had issues with his curfew shortly thereafter. She said the Defendant contacted her on June 28, 2011, to inform her that he was in the hospital after being run over by a car. She stated the Defendant told her that the incident occurred on the previous day, June 27, at 5:50 p.m. at a Hardee's restaurant and that he was trying to make it home for his 6:00 p.m. curfew when an argument arose between him and his traveling companion, whose identity the Defendant would not reveal. She said the Defendant told her that he had "whooped his companion's a--" and that the companion, upset about the beating, ran over him with his car. She said the Defendant told her that the police were not notified and that he was taken to the hospital by ambulance from the Hardee's parking lot.

Ms. McNutt testified that she learned the Defendant's statements were false when she received an "FYI Field Interview" from the Knoxville Police Department taken by a police officer that showed the Defendant was out at 12:44 a.m on June 28. The field interview showed that the Defendant told the officer that he was in violation of his curfew. It also showed that the Defendant had a compound fracture to his right shin, that he would not tell the officer what happened, that Jerry Waterson attempted to help but was the focus of the

Defendant's anger, and that the Defendant stated "he would make Waterson pay for the injury." Ms. McNutt said the field interview alerted her to the Defendant's violation of his curfew. She stated that the Defendant was a violent offender who continued to engage in violent acts and to disregard the rules of his probation and that enhanced probation had nothing to offer him to ensure the safety of the community.

On cross-examination, Ms. McNutt testified that the Defendant was on enhanced probation a little over one month before she filed a probation revocation warrant. She said that she did not recall performing a drug screen on the Defendant and that if he had failed a drug screen while she was supervising him, it would have been on his violation report. She said that one of the conditions of the Defendant's probation was that he attend "Cherokee." She said that the Defendant stated he attended the program but that she never received verification. She said that another condition of the Defendant's probation was the ankle monitor but that it did not become available until August.

Ms. McNutt testified that after the Defendant began enhanced probation, he reported to her twice and that she made home visits on June 20 and June 28. She said the Defendant called her from the hospital after the incident. She said that she knew the Defendant had leg surgery but that she thought the phone call was before the surgery. She said she did not communicate with the Defendant after she filed the probation revocation warrant, which was after she verified with the Police Department that the Defendant lied to her about the incident at Hardee's. She said that she did not communicate with the hospital concerning the Defendant's condition and that she did not know if he was on pain medication.

Ms. McNutt testified that she spoke with defense counsel before the revocation hearing and that they differed on how the series of events occurred after the Defendant was hit by the car. She said she had to file a revocation warrant after the incident at Hardee's because it was a violent act and he was violent. She said that counsel was concerned the Defendant would not receive proper medical treatment if he was arrested but that she told counsel the Sheriff's Department was responsible for that. She said she always encouraged defendants on probation to surrender when there was an arrest warrant.

The Defendant read a letter he prepared for the trial court. He said he made mistakes and described a difficult childhood. He said he wanted to raise and provide for his two young children. He said that he had metal rods and screws in his leg, that he had just begun to walk again, and that he still needed help at times. He said he wanted to finish school, complete physical therapy and his mental health treatment, and complete his probation. He said that he had a temper but that with the support of the court, his social worker, and his psychiatrist, he could finish his probation.

Before making its ruling, the trial court noted that the Defendant had a number of problems on probation. The trial judge said that although the Defendant made good progress, he "got [himself] into trouble again," did not keep his appointments, and "wanted to run his life the way he wanted to run it until somebody ran over his leg and changed his life again." The court noted that the Defendant had "a lot of promise" but that he had problems with truthfulness, violence, and disobeying court rules. The court found that the Defendant had gone through "three rounds" with a probation officer and "one or two rounds" more with an enhanced probation officer and that there were no other alternative placements for the Defendant when, in just over a year, "[h]e violated every condition that he had . . ." In its written order, the court found that the Defendant had "been guilty of violating the laws of this State, and ha[d] otherwise violated the conditions of probation." The court revoked the Defendant's probation, ordered his sentence into full force and effect, and gave him 246 days of credit for time served. This appeal followed.

A trial court may revoke probation upon its finding by a preponderance of the evidence that a violation of the conditions of probation has occurred. T.C.A. § 40-35-311(e) (2010). "In probation revocation hearings, the credibility of witnesses is to be determined by the trial judge." State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). If a trial court revokes a defendant's probation, its options include ordering confinement, ordering the sentence into execution as originally entered, returning the defendant to probation on modified conditions as appropriate, or extending the defendant's period of probation by up to two years. T.C.A. §§ 40-35-308(a), (c), -310 (2010); see State v. Hunter, 1 S.W.3d 643, 648 (Tenn. 1999). The judgment of the trial court in a revocation proceeding will not be disturbed on appeal unless there has been an abuse of discretion. See State v. Smith, 909 S.W.2d 471, 473 (Tenn. Crim. App. 1995). In order for this court to find an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001).

**I**

The Defendant contends that the trial court erred by considering the incident at Hardee's as a violation of his probation. The State contends that the trial court properly found that the incident at Hardee's violated the Defendant's probation. We agree with the State.

The Defendant argues that the trial court "relied more on interpretation than on direct fact" in finding that the incident at Hardee's constituted a violation of probation. The evidence shows that the Defendant told the officer who conducted a field interview that he was in violation of his curfew and that he was going to "make Waterson pay for the injury"

to his leg. The field interview was taken on June 28, 2011, at 12:44 a.m., over six and one-half hours past the Defendant's 6:00 p.m. curfew. Ms. McNutt testified that the Defendant told her that he "whooped his companion's a--" and that the companion ran over him with his car. Ms. McNutt's testimony and the police officer's field interview were undisputed and showed that the Defendant was out past his 6:00 p.m. curfew and engaged in assaultive, abusive, threatening, or intimidating behavior in violation of his probation. The trial court did not err in finding that the Defendant violated the special conditions of his probation and revoking the Defendant's probation.

## II

The Defendant contends the trial court abused its discretion by revoking his probation. The State counters that the trial court properly revoked the Defendant's probation. We agree with the State.

We conclude that the trial court's determination that the Defendant violated the conditions of his probation was supported by a preponderance of the evidence and that the court did not abuse its discretion in revoking his probation and ordering him to serve his sentence in confinement. By his own admission, the Defendant violated the terms of his probation. According to the field interview, the Defendant admitted to being out past his 6:00 p.m. curfew. He also admitted to Ms. McNutt that he "whooped his companion's a--," a violent behavior. Moreover, the evidence supports the court's determination that the Defendant's efforts at completing probation were unsatisfactory.

The Defendant argues that his uncorroborated confessions are insufficient to revoke his probation because the statements were "not made by a man of sound body and mind." He argues that he suffered traumatic injuries and "was most likely on strong pain medication." No evidence is in the record showing that the Defendant was taking pain medication at the time of his statements. A defendant's admission alone is substantial evidence to support a trial court's revocation of his probation. See State v. Bryan James Farve, No. E2008-00939-CCA-R3-CD (Tenn. Crim. App. March 23, 2009). Notwithstanding the Defendant's admissions made after his injury, he was out past his curfew according to the date and time of the field interview, and the officer noted on the interview that Mr. Waterson was "obviously the focus of [the Defendant's] anger." The facts in this case and the Defendant's failure at past probation opportunities were sufficient proof to support the court's revoking the Defendant's probation.

## III

The Defendant contends the trial court erred by not considering less restrictive alternatives to revoking his probation. The State contends that the trial court properly ordered the Defendant to serve his sentence. We agree with the State.

We are unpersuaded that the trial court abused its discretion in ordering the original sentence into execution. At a previous revocation hearing, the court allowed the Defendant the opportunity to remain on alternative sentencing by placing him on enhanced probation for his noncompliance with regular probation. The Defendant did not comply with the conditions of enhanced probation after that reprieve, and we note the Defendant violated his enhanced probation just over one month of his receiving the reprieve. The court did not abuse its discretion in imposing incarceration rather than allowing the Defendant an additional reprieve.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE